IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NATIONAL COUNCIL OF EXAMINERS
FOR ENGINEERING AND SURVEYING,

Plaintiff

v.                                              **Civil No. 07-1479 (SEC)**

BETHZAIDA CAMERON-ORTIZ,

Defendants

**DEFAULT JUDGMENT**

Upon reviewing Plaintiff's Motion for Entry of Default Judgment (Docket # 16), and supporting Memorandum (Docket # 17), and it appearing from the record that default was entered by the Clerk of this Court upon Defendant 1for failure to answer or otherwise plead in this case (Docket # 13), this Court finds that Plaintiff is entitled to Judgment by Default, and hereby **ORDERS, ADJUDGES, AND DECREES**:

1. Plaintiff National Council of Examiners for Engineering and Land Surveying ("NCEES") is a nonprofit corporation with its principal place of business in Clemson, South Carolina. NCEES was founded in 1920, and serves state boards in all states, the Commonwealth of Puerto Rico, and the U.S. Territories, which register and license professional engineers and land surveyors. A primary function of NCEES is to prepare standardized, confidential examinations that are used by the state and territorial boards to help determine the competency of individuals seeking to become licensed to practice as professional engineers and land surveyors. Complaint, § 4.

2. Defendant Bethzaida Cameron-Ortiz ("Cameron-Ortiz" or "Defendant") is a resident of Puerto Rico. Complaint, § 5.

**CIVIL NO. 07-1479 (SEC)**                                                                 Page 2

3.  An individual who intends to provide services as an engineer must possess knowledge, skills, and abilities necessary to provide such services in a competent manner. Working with appropriate subject matter experts, NCEES prepares standardized examinations that test a candidate's knowledge, skills and competence. One such examination is the Principles and Practice of Engineering ("PE") examination. Complaint, § 6.

4.  The PE examination tests academic knowledge and knowledge gained in engineering practice and covers a comprehensive range of subjects in engineering. Distinct PE examinations are administered to specific subject areas. Currently, there are 17 PE exam subjects, one of which is civil engineering ("PE Civil"). Complaint, § 8.

5.  The PE examination is the second of two exams required for a professional license in engineering. A candidate must also pass, or be excused from taking, the Fundamentals of Engineering ("FE") examination, which tests subjects that are taught in a typical, accredited baccalaureate engineering curriculum. Complaint, § 7.

6.  Each PE and FE examination is developed at considerable effort and expense to NCEES, and has significant individual value. Every PE and FE examination question is reviewed and revised many times before being finalized. Complaint, § 9.

7.  The PE Civil Examination is an eight-hour examination, with one four-hour session in the morning and another in the afternoon. All examinees of the PE Civil Examination must take the Breadth Exam during the morning session. The Breadth Exam contains questions from all five areas of civil engineering:

Environmental, Geotechnical, Structural, Transportation, and Water Resources. Each examinee must also select one of five Depth Exams, which are administered during the afternoon session. The Depth Exams focus more closely on a single area of practice in civil engineering. Complaint, § 10.

8. The FE examination also is an eight-hour examination, with one four-hour session in the morning and another in the afternoon. Examinees take a general exam during the morning session, consisting of questions common to six engineering disciplines: Chemical, Civil, Electrical, Environmental, Industrial, and Mechanical. During the afternoon session, the examinee must select one of the six discipline-specific exams or another general exam. Complaint, § 12.

9. The PE Civil Examination consists of 80 multiple-choice questions, 40 during the morning and 40 during the afternoon session. The FE examination consists of 180 multiple-choice questions, 120 during the morning and 60 during the afternoon session. Complaint, § 11 & 13.

10. PE and FE examinations include new questions and previously used questions. Some of the previously used questions serve as "equators" to measure the level of performance of candidates from one form of the examination to another. The use of equators ensures that test results on different forms of the examination can be meaningfully compared with one another. Complaint, § 14.

11. Because questions and answers from a particular PE and FE exam may be reused on future exams, it is critical that the examination forms be maintained in a secure manner. The questions and answers should not be copied, disclosed or disseminated to any members of the general public -- in whole or in part -- unless NCEES determines to do so. Docket # 17-2, ¶ 13.

12. PE and FE examinations are original compilations of NCEES and contain original test questions created by or for NCEES. To help protect the confidentiality of its examinations, NCEES registers each examination for copyright protection pursuant to the Register of Copyrights' "secure test" regulations. See 37 C.F.R. § 202.20(c)(2)(vi) (2000). A "secure test" is defined as "a non-marketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." 37 C.F.R. § 202.20(b)(4). The secure test regulations suspend the requirement to deposit copies of the work, and require instead that registrants of secure tests need only deposit a portion or a description of the test sufficient to identify it. *See* 37 C.F.R. § 202.20(c)(2)(vi). Complaint, § 15.

13. Each of these test forms, and each of the questions and answers contained on the forms, is an original work of authorship, and the copyright is owned by NCEES. Complaint, § 15 & 17.

14. NCEES places copyright notices on its examinations. NCEES also places statements prohibiting copying and reproduction on the front of its examination booklets. In addition, NCEES informs prospective examinees, in writing, that they are prohibited from removing test questions or booklets from the examination area. Complaint, § 17.

15. To further protect the integrity of the examination process as well as NCEES's intellectual property rights, all individuals who take the NCEES examinations are asked to provide their signature below a statement on their answer sheet that, as currently worded, includes the following language:

**CIVIL NO. 07-1479 (SEC)** <span style="float:right">Page 5</span>

> I further affirm that I will not copy any information onto material to be taken from the exam room. Nor will I reveal in whole or in part any exam questions, answers, problems or solutions to anyone during or after the exam, whether orally, in writing, on any internet "chat rooms," or otherwise.
> Complaint, § 20; Docket # 17 at 5.

16. Similar language, prohibiting the copying and/or disclosure of exam information during or after an exam, has been included on NCEES answer sheets for many years. Complaint, § 20.

17. On October 29, 2005, the FE examination was administered at the University of Puerto-Rico in Mayaguez as part of Puerto Rico's licensing process for engineers. Cameron-Ortiz took the FE examination on that date, and at that location. Complaint, § 21.

18. On October 27, 2006, the PE Civil examination was administered at the University of Puerto Rico in Mayaguez as part of Puerto Rico's licensing process for engineers. Cameron-Ortiz took the PE Civil examination on that date and at that location. She tested in the morning for some period of time and then left the examination room. She returned after the lunch break for the afternoon testing session. Complaint, § 22.

19. During the afternoon session, an exam proctor observed unusual behavior on the part of Cameron-Ortiz. The proctor informed the Chief Examiner, who also observed Cameron-Ortiz's behavior. The proctor and Chief Examiner both suspected that Cameron-Ortiz was engaged in inappropriate copying of the exam contents. Complaint, §23.

20. When confronted, Cameron-Ortiz denied that she had any illicit copying, or recording devices; however, when she was talking with the Chief Examiner, an electronic device was discovered in her jacket sleeve. Complaint, § 24.

21. Cameron-Ortiz was taken to a private room, and a search of her jacket and bag was conducted. Various recording and transmitter devices were found, sewn into the pockets of her jacket and her bag, including: (1) a wireless audio/video transmitter module with a built-in microphone, (2) a mini video camera, (3) a receiver, (4) a pocket video recorder, (5) a cradle used to connect to a TV or computer with audio/video input, and (6) two battery packs which could be used to power the equipment in her possession. This equipment allowed Cameron-Ortiz to copy, transmit, duplicate, and otherwise reproduce the contents of the exam material to which she had access. Complaint, § 25 & 26.

22. Cameron-Ortiz used the above-described equipment, found in her possession, to videotape the PE Civil examination. Complaint, § 27.

23. Following further investigation, NCEES discovered that Cameron-Ortiz had also videotaped the contents of the FE examination material to which she had access on October 29, 2005. Complaint, § 28.

24. Cameron-Ortiz was criminally charged, and convicted, as a result of the above-mentioned actions. Complaint, § 29; Docket # 17-3.

25. Under the Copyright Act, 17 U.S.C. § 101, *et. seq.*, NCEES enjoys exclusive rights with respect to its copyrighted PE Civil, and FE test forms, and the questions and answers therein, including the exclusive rights to copy, reproduce, distribute, display, or create derivative works based on the forms, questions and answers. Complaint, § 31 & 32.

26. The registration number assigned by the United States Copyright Office to the PE Civil test form infringed by defendant is TX 6-466-566. The registration number assigned by the Copyright Office to the FE test form infringed by defendant is TX 6-295-288. Complaint, § 16.

27. At no time was Cameron-Ortiz authorized to videotape, copy, reproduce, publish, distribute copies of, disclose to third persons, display or prepare derivative works based on all or any portion of the PE Civil and FE examination forms to which she had access as an examinee. Complaint, § 34.

28. Cameron-Ortiz has infringed NCEES's copyrights in the PE Civil and FE examination forms, and its copyrights in the questions and answers contained therein. Complaint, § 35.

29. Cameron-Ortiz clearly engaged in willful copyright infringement. Her actions were knowing and egregious. Complaint, § 36.

30. The actions discussed above adversely affect the public interest and have the potential for repetition. Complaint, § 37.

31. Cameron-Ortiz's infringement of NCEES's copyrights has caused NCEES significant financial harm by compromising questions and answers from the examinations administered to her in October 2005, and October 2006. See ETS v. Katzman, 793 F.2d 533, 543 (3d Cir. 1986) (infringement of secure test questions "renders the materials worthless"). Complaint, § 38.

32. Numerous interests are at stake when an examinee, or prospective examinee, attempts to compromise a secure examination, for his or her own benefit, or to improperly assist other examinees. Those interests include the interests of score users (which, in this instance, are the licensing boards which rely upon NCEES's

**CIVIL NO. 07-1479 (SEC)**                                                                 Page 8

examinations as part of their licensure process); the interests of the general public, which relies upon the test scores as an assessment of an examinee's competence, knowledge or skills; the interests of the testing entity, which, in addition to protecting its intellectual property, has "the right to protect its own reputation by assuring the reliability of the information it provides;" and the interests of other examinees, who are "entitled to assurance that no examinee enjoys an unfair advantage..."' Murray v. Educational Testing Service, 170 F.3d 514, 517 (5th Cir. 1999) (citations omitted); see also Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, 458 F. Supp.2d 252, 262 (E.D. Pa. 2006) (finding that "Defendants' willful and egregious copyright infringement harmed the public as well as plaintiffs. States have a compelling interest in regulating admission to the bar both to maintain the integrity of the legal system and to protect the safety of their citizens").

33. The entry of default judgment is proper in this case because Defendant was properly served with a copy of the summons and complaint, and she failed to answer, or otherwise appear within the statutory time limit. See Graduate Management Admission Council v. Raju, 267 F. Supp. 2d 505, 510 (E.D. Va. 2003).

34. "[A]fter the entry of default, [the Court] must accept as true all well-pleaded factual allegations in the complaint." Hernandez v. Sony, No. CV-01-2187, 2003 U.S. Dist. LEXIS 7922, at *3 (D.P.R. Feb. 3, 2003) (citations omitted). The uncontested allegations set out in NCEES's complaint, the additional factual information provided in the Declaration of Robert B. Whorton ("Whorton

Decl."), and the other materials filed by NCEES, support entry of judgment against the defendant on both of NCEES's claims.

35. "In order to prevail in a copyright infringement action, [NCEES] must establish two facts: (1) ownership of a valid copyright and (2) unauthorized copying of the protected work by the alleged infringer." Microsoft Corp. v. PC Express, 183 F. Supp. 2d 448, 452 (D.P.R. 2001) (citations omitted).

36. NCEES owns the copyright for the PE Civil examination, and FE examination forms relevant to this case, and the questions and answers contained therein. It has been issued copyright registration certificates for each work that has been infringed by Defendant. Complaint, § 16 & 33; Docket # 17 at 9.

37. A certificate of registration from the Copyright Office constitutes "*prima facie* evidence of the validity of the copyright," and of the facts stated in the certificate. 17 U.S.C. § 410(c); see also Gener-Villar v. Adcom Group, Inc., 560 F. Supp. 2d 112, 127 (D.P.R. 2008).

38. Defendant copied NCEES's copyrighted materials. The infringement is indisputable, and default judgment is appropriately entered in NCEES's favor on its claim of copyright infringement. Docket # 17 at 9.

39. The relationship between Defendant and NCEES was contractual in nature. See, e.g., Johnson v. Educational Testing Service, 754 F.2d 20, 26 (1st Cir. 1985). In exchange for being given the opportunity to take the PE Civil and FE examinations, Cameron-Ortiz paid an examination fee, and agreed to comply with various exam administration policies and rules. Docket # 17 at 10.

40. When she took the FE examination and the PE Civil examination, Defendant signed a statement on her answer sheets affirming that she had read and agreed

to be bound by the terms on the Candidate Information sheet that is provided to all examinees. The Candidate Information sheet prohibited the use of devices with communication or text-editing capabilities in the examination room, and prohibited "fraud, deceit, [and] dishonesty" in connection with taking any NCEES examination. Defendant breached her contract with NCEES by failing to adhere to these prohibitions. Complaint, § 20, 40 & 41; Docket # 17 at 10.

41. Defendant also affirmed, through her signature on her answer sheets for the FE examination and PE Civil examination, that she would "not remove any exam-related information from the exam room." Defendant breached her contractual agreement with NCEES by recording information from the FE examination and PE Civil examination and removing, and attempting to remove said information from the exam room. Complaint, § 20; Docket # 17 at 10.

42. NCEES is entitled to compensatory damages for Cameron-Ortiz's acts of copyright infringement. "Once liability is found, the factfinder is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." Soto-Hernandez v. Cartagena, No. 04-1745, 2007 U.S. Dist. LEXIS 81041, at *3 (D.P.R. Oct. 31, 2007) (citation omitted). The court has "considerable discretion" in awarding damages. Hernandez v. Sony, No. CV-01-2187, 2003 U.S. Dist. LEXIS 7922, at *4 (D.P.R. Feb. 3, 2003) (citation omitted).

43. As expressly permitted under the Copyright Act, 17 U.S.C. § 504(c)(1), NCEES has elected to recover its actual damages, rather than statutory damages. "Actual damages are generally calculated with reference to the loss in the fair market value of the copyright . . . ." Data Gen. Corp. v. Grumman Sys. Support Corp.,

36 F.3d 1147, 1170 (1st Cir. 1994) (citations omitted). In a case such as this, involving the infringement of secure standardized test questions, the loss in fair market value is appropriately calculated by determining the development costs for any infringed questions and infringed forms that are retired because of the compromise. See ETS v. Katzman, 793 F.2d 533, 543 (3d Cir. 1986) (infringement of secure test questions "renders the materials worthless.").

44. Due to Defendant's actions, NCEES retired one copyrighted exam form, and a portion of another copyrighted exam form. Based upon the cost of replacing the test questions on each of those forms, NCEES has suffered damages in the amount of $562,046.40 with respect to the compromised PE examination, and $433,891.20 with respect to the compromised FE examination. Whorton Decl. ¶¶ 21-22. *Cf.* Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, 458 F. Supp. 2d 252, 262 (E.D. Pa. 2006) (awarding almost $12 million in damages based upon defendants' infringing use of approximately 110 questions from the Multistate Bar Examination, plus injunctive relief and attorneys' fees). Docket # 17 at 12; Docket # 17-2, ¶ 20-22.

45. NCEES's actual damages from Defendant's infringements also include the expenses that NCEES incurred to identify the scope of the infringements, and to address the effects of the infringements with respect to future administration of the exams in question. NCEES incurred such expenses in the amount of $25,693.25. Docket # 17 at 12; Docket # 17-2, ¶ 23.

46. This Court **AWARDS** NCEES a total of $1,021,630.80 in actual damages for Defendant's infringements of NCEES's copyrights. Docket # 17 at 12-13.

**CIVIL NO. 07-1479 (SEC)**                                                             Page 12

47. NCEES is also entitled to compensatory damages on its breach of contract claim. The amount of these damages is the same as the damages suffered by NCEES as a result of defendant's copyright infringements. Therefore, the Court awards NCEES damages in the amount of $1,021,630.80 for Defendant's contract breaches, but NCEES may recover this amount only once. Docket # 17 at 13.

48. Defendant's willful copyright violations, involving two separate exam administration dates, warrant injunctive relief. See 17 U.S.C. § 502. "The right to an injunction attaches where the copyright holder has established past infringement and the likelihood of future infringements." Hernandez, 2003 U.S. Dist. LEXIS 7922, at *13 (citations omitted); see also Walt Disney, 897 F.2d at 567 (finding that "[w]hen a copyright plaintiff has established a threat of continuing infringement, he is entitled to an injunction.") (citations omitted). Docket # 17 at 13.

49. Pursuant to 17 U.S.C. § 503, this Court **ORDERS** the destruction of all infringing copies of materials in Defendant's possession, that include all or any part of any copyrighted NCEES test forms, test questions, or test answers. Such relief is included in the Court's final Judgment. In addition, Defendant must confirm, under penalty of perjury, that she has complied with this destruction requirement. See Complaint, § 45; Docket # 17 at 14.

50. As the prevailing party, NCEES is entitled to recover its costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505. "[N]otwithstanding their 'discretionary' nature, [attorneys' fees] are 'routinely awarded.'" PC Express, 183 F. Supp. at 455 (citations omitted); see also Pedrosillo Music v. Radio Musical, Inc., 815 F. Supp. 511, 517 (D.P.R. 1993) (holding that "[i] the absence

of mitigating factors courts routinely grant both costs and attorney's fees in successful infringement actions.") (citations omitted).

51.  The court "may consider a number of factors in awarding fees to further the underlying purpose of the Copyright Act." Hernandez, 2003 U.S. Dist. LEXIS 7922, at *14. Relevant factors include "the motivation of the parties, the objective unreasonableness of the claims presented and the need to advance considerations of compensation and deterrence." Id.

52.  All relevant factors justify awarding attorney's fees to NCEES. Defendant undermined the licensing process in Puerto Rico for individuals who wish to perform engineering services, by videotaping NCEES's copyrighted examination materials. NCEES's motivation, in contrast, is to protect its intellectual property rights and the integrity of the licensing process, thereby helping to protect the general public. Since others may be tempted to duplicate Defendant's wrongful conduct, there is a significant need to deter similar conduct by others. Based on the foregoing, the Court awards NCEES its reasonable attorney's fees. This Court **ORDERS** that NCEES file a properly supported petition for attorney's fees, within thirty (30) days of this Order.

**SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of June, 2009.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
United States District Judge